# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

HAROLD M. NYANJOM, )
)
               Plaintiff, )
)
vs. ) Case No. 12-1461-JAR-KGG
)
HAWKER BEECHCRAFT, INC., )
)
               Defendant. )
)

## MEMORANDUM & ORDER

Now before the Court is Plaintiff's Motion to Compel seeking supplemental responses to various interrogatories and request for production. For the reasons set forth below, Plaintiff's motion is **DENIED**.

## BACKGROUND

Plaintiff, who was born in 1968, was formerly employed by Defendant. That employment was terminated on June 1, 2011.

Plaintiff, who represents himself *pro se*, filed the present case in the Southern District of New York alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA") by his former employer in the termination of his employment, failure to accommodate his alleged disability, unequal terms and conditions of employment, and retaliation. (*See generally* Doc. 2.) The case was transferred to the District of Kansas on

December 11, 2012, because the alleged wrongful employment practices occurred in Wichita.  (Doc. 7.)

Defendant filed its bankruptcy Petition in the Bankruptcy Court of the Southern District of New York on May 3, 2012.  Pursuant to the Order of that Court, all Proofs of Claims were required to be filed by September 14, 2012.  (Doc. 29.)  The "Stipulation and Agreed Order Modifying the Plan Injunction with Respect to Certain Former Employee Claimant" filed in the Bankruptcy Court on May 17, 2013, had the limited purpose of allowing Plaintiff to liquidate the claims then pending in the present case.  (Doc. 29-1.)  The stipulation does not authorize additional or new claims against Defendant.  (*Id*.)

The Court recently entered a Memorandum & Order (Doc. 116) denying Plaintiff's Motion to Amend Complaint (Doc. 64).  As a result, Plaintiff's claims are limited to discrimination and retaliation under the Americans with Disabilities Act ("ADA").

## ANALYSIS

I.  **Standards for Motions to Compel.**

Fed.R.Civ.P. 26(b) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  As such,

the requested information must be both nonprivileged and relevant to be discoverable.

"'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence." *Teichgraeber v. Memorial Union Corp. of Emporia State University*, 932 F.Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted). "Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Smith v. MCI Telecommunications Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991). Stated another way, "discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Snowden By and Through Victor v. Connaught Lab.*, 137 F.R.D. 325, 341 (D.Kan.1991), appeal denied, 1991 WL 60514 (D.Kan. Mar. 29, 1991).

The scope of discovery is broad, but not unlimited. If the proponent has failed to specify how the information is relevant, the Court will not require the respondent to produce the evidence. *Gheesling v. Chater*, 162 F.R.D. 649 (D. Kan. 1995). Within this framework, the Court will address each of Plaintiff's discovery requests at issue.

**II.     Specific Discovery Requests.**

### A. Interrogatories Nos. 5, 6, and 11.

Interrogatory No. 5 inquires as to whether Defendant "receive[d] any reports or complaints from any source during the entire period prior to the acts of discrimination, concerning the conditions of the place/s where the discrimination occurred[.]" (Doc. 91, at 6.) Interrogatory No. 6 asks, "Were there any improvements or changes made to the area/s where the discrimination occurred . . . after the discrimination occurred?" (*Id*., at 7.) Interrogatory No. 11 asks, "Were there any ADA mandated signs, barriers or anything else during or near the scene of the alleged acts of discrimination (or instrumentality) warning of the conditions existing thereon?" (*Id*., at 9.)

Defendant objects, in part, that the information requested by the interrogatories is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. More specifically, Defendant argues that these interrogatories "make no sense" in the context of a disability discrimination case and surmises that they were drafted for/borrowed from a premises liability case. (*See* Doc. 101, at 6-11.)

The Court agrees that these interrogatories, as worded, are incompatible with a disability discrimination case. The Court finds that Defendant's effort to respond to Interrogatory No. 11 by stating that "it has posted ADA-mandated signs,

advising employees of their rights under the Act," was a sufficient compromise. Plaintiff's motion is **DENIED** in regard to Interrogatories Nos. 5, 6, and 11.

### B. Interrogatories Nos. 25 and 26, and Requests Nos. 26 and 27.

These interrogatories seek Defendant's "net worth" (No. 25) and "assets, liabilities, and business affairs" for 2009 to the present (No. 26). (Doc. 91, at 14-15.) Request for Production No. 26 asks for various financial documents from Defendant, including financial statements, profit and loss statements, cash flow statements, annual reports, and state and federal corporate tax returns. (*Id.*, at 17.) Request for Production No. 27 seeks all documents supporting an interrogatory regarding Defendant's net worth.[1] (*Id.*, at 18.) Plaintiff argues that the documents "are necessary for [his] development of punitive damages calculations, to determine the nature and extent of additional discovery on these issues that may be required and to decide whether expert testimony will be necessary." (*Id.*, at 19.)

Defendant has responded that punitive damages awards under the ADA are not based on a defendant's net worth but rather the Act "scales punitive damage awards according to the size of the defendant employer, with the maximum award – $300,000 – being available in cases involving an employer with more than five

---

[1] It appears this Request was improperly worded as it refers to "Interrogatory No. 1-24 (net worth of Defendant)." There is no Interrogatory No. 1-24 in Plaintiff's discovery requests. Interrogatories No. 1 through No. 24 do not relate to net worth. As such, the Court will simply interpret this as a request for documents supporting Defendant's statement of its net worth.

5

hundred employees." (Doc. 101, at 11, citing 42 U.S.C. § 1981a (b)(3).) As such, Defendant objects that the requested information is irrelevant.

The Court acknowledges that a defendant's net worth is often relevant to a claim for punitive damages, as Plaintiff argues. (Doc. 91, at 21-24.) None of the cases cited by Plaintiff, however, are ADA cases.

The Court agrees with Defendant that discovery of its net worth is not relevant at this stage of the litigation given the statutory cap on punitive damages contained in the ADA, which is based on the number of Defendant's employees rather than its net worth. (Doc. 101, at 13-14, citing ***EEOC v. Dillon Companies, Inc.***, No. 9-2237-ZLW-MEH, 2010 WL 3239262, *5 (D.Colo. Aug. 13, 2010).) The Court notes that Defendant has conceded that it has the requisite number of employees to qualify for the statutory cap on punitive damages. (Doc. 101, at 12.) As such, there is no legitimate interest in producing the requested information at this time.

Additionally, the Court notes that this District typically employs a more stringent, two-pronged test for the production of requested tax returns. ***Hilt v. SFC Inc.***, 170 F.R.D. 182 (D. Kan. 1997).

> 'First, the court must find that the returns are relevant to the subject matter of the action. Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable.' 'The party seeking production has the burden of showing relevancy, and

6

> once that burden is met, the burden shifts to the party opposing production to show that other sources exist from which the information is readily obtainable.'

*Id*. (quoting *Audiotext Communications Network, Inc. v. US Telecom, Inc.*, No. 94–2395–GTV, 1995 WL 625962, at *11 (D.Kan., Oct. 5, 1995) (citations omitted)).

Given lack of relevance of Defendant's net worth to the stated issue of punitive damages in an ADA case, Plaintiff cannot meet his burden for the requested production of Defendant's tax returns (or other financial information). The Court **DENIES** Plaintiff's motion in regard to Interrogatories Nos. 25 and 26 and Requests Nos. 26 and 27.

### C. Requests Nos. 18 and 19.

These requests seek Defendants disciplinary policies (No. 18) and personnel policies and handbooks "in effect at HBC at any time during Defendant's employment of Plaintiff" (No. 19). (Doc. 91, at 3-4, 10.) Defendant responds that it does not have a handbook, but "has provided its EEO policy, all of the collective bargaining agreements that were in effect during plaintiff's employment, the Rules of Conduct, its policy regarding FMLA leave that was in effect when Plaintiff was employed, and its policies on unpaid leaves of absence." (Doc. 101, at 18.) Defendant argues that any other employment related policies it has "have no relevance to plaintiff's claims, and collecting all of the policies and their historical

7

versions would be very burdensome." (*Id.*) Defendant continues that it "believes that it has provided the personnel policies that are relevant, and requests that plaintiff's motion be denied." (*Id.*)

The Court finds that these requests, as written, are overly broad and encompass information that has no relevance to Plaintiff's ADA claim. Defendant has no employee handbook and cannot be ordered to produce documents that do not exist. Defendant has, however, made an effort to produce to Plaintiff any potentially relevant personnel policies. Without Plaintiff providing the Court with examples of additional specific policies that should exist and/or that have been withheld by Defendant, the Court finds Defendant's response to be appropriate. Plaintiff's motion is **DENIED** in regard to Requests Nos. 18 and 19.

### D. Request No. 25.

Request for Production No. 25 seeks "documents that describe Defendant's corporate structure . . . ." (Doc. 91, at 16.) Plaintiff includes this document request in his discussion of discovery requests relating to his claim for punitive damages. As stated above, this is not a valid justification for production of information in this ADA case.

Further, other than to recite the request and Defendant's response, Plaintiff has not included any specific argument as to why the corporate structure information is relevant to his claims or why Defendant's objections are improper.

Defendant argues that Plaintiff's motion "does not explain how plaintiff should be entitled to require defendant to search through fourteen years of records to produce all documents that relate in any way to defendant's corporate structure." (Doc. 101, at 19.) Given Plaintiff's lack of discussion of this document request, the Court agrees. Plaintiff's motion is **DENIED** in regard to Request No. 25.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Discovery (Doc. 91) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 20th day of February, 2014, at Wichita, Kansas.

                                         S/ KENNETH G. GALE
                                         HON. KENNETH G. GALE
                                         U.S. MAGISTRATE JUDGE